IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| MICHAEL H LEVITIN; aka MIKE LEVITIN | § | CASE NO: 06-30808 |
|     Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| THE MICHAEL GROUP, L.L.C. | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3412 |
| | § | |
| MICHAEL H LEVITIN | § | |
|     Defendant(s) | § | |

## MEMORANDUM OPINION

This adversary proceeding was called to trial on February 1, 2007. The issue is whether Mr. Levitin is entitled to a bankruptcy discharge under § 727 of the Bankruptcy Code.

### Jurisdiction and Venue

This Court has jurisdiction of this matter under 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1408.

### Limited Nature of Adversary Proceeding

The Plaintiff raises two objections to Mr. Levitin's discharge. First, the Plaintiff objects under § 727(a)(4)(A) based on the Plaintiff's allegation that Mr. Levitin's schedules and statement of financial affairs were knowingly and fraudulently false. Second, the Plaintiff objects under § 727(a)(5) on the grounds that the debtor has failed to adequately account for his investment in H-Townrealty.com, L.L.C.

### Background

Mr. Levitin owned TMG Real Estate Services L.L.C. ("TMG"), a real estate brokerage company in Houston. The real estate brokerage took small fees from real estate agents and

1

allowed those agents to retain the bulk of their commission earnings from real estate sales. By 2004, the company had over 725 real estate agents and had annual gross revenues exceeding $10,000,000. At the peak of the company's prosperity, it decided to affiliate with Cendant/ERA, a national real estate firm.

TMG received an advance of approximately $1,400,000 from Cendant/ERA. As part of TMG's agreement with a Cendant/ERA, each of TMG's agents would be required to pay 8% of the agent's commission earnings to Cendant/ERA. This provision caused great disharmony amongst the agents. By late 2005, the number of agents working for TMG was cut by more than 50% and revenues had fallen to the point that TMG was losing money.

Mr. Levitin's ex-wife, Sandra Holmes, was also his business partner.[1] When the $1,400,000 advance was received from Cendant/ERA, TMG paid $547,000 to Sandra Holmes[2] as a "consulting fee." In 2004, TMG also paid $740,277.54 in consulting fees to Mr. Levitin. The vast majority of the $740,000 came from loan proceeds from Cendant/ERA.

In 2002, Sandra Morgan went to work for TMG. She and Mr. Levitin eventually entered into a romantic relationship. In October 2004, Mr. Levitin married Sandra Morgan. In October 2005, Sandra Morgan and Mr. Levitin separated. Nevertheless, Sandra Morgan continued to be employed by TMG. In December 2005, Sandra Morgan and Mr. Levitin discussed TMG's deteriorating financial condition. They decided that Sandra Morgan should start a new real estate company that was in the same discount real estate brokerage business that TMG had successfully operated up until the time of the Cendant/ERA transaction in 2004. However,

---

[1] Mr. Levitin and Sandra Holmes were separated in March 1998, but they remained business partners until May or June 2004.

[2] Following his divorce from Sandra Holmes, Mr. Levitin married Sandra Morgan. To avoid confusion with respect to the two "Sandras", the Court refers to the two women by their full names.

Sandra Morgan did not have sufficient cash or start-up capital that she could (or would) invest in the new real estate business.

Sandra Morgan and Mr. Levitin agreed that Sandra Morgan could take moneys from TMG to fund the start up of the new business. The new business was named H-Townrealty.com L.L.C ("H-Town"). H-Town was designed as a clone of TMG. It offered substantially the same pricing to real estate agents. It has substantially the same management. The majority of its present agents are former TMG agents.

The ostensible owners of H-Town are Robert Allison and Robert S. Marks. Mr. Allison is Mr. Levitin's second cousin. Mr. Marks is Mr. Levitin's business associate. Although they are the official registered owners of H-Town, that registration is a sham. Sandra Morgan testified that she has a binding agreement, not yet recorded with the Texas Secretary of State. That binding agreement reflects that she has the right to 100% of the ownership interests in H-Town, without the payment of any additional money by her. Mr. Levitin now runs H-Town along with Sandra Morgan. All of the initial capital and working capital for H-Town was provided by Sandra Morgan or by TMG. Although H-Town's documents reflect that Allison and Marks provided working capital, those documents are false.

## Analysis

The Plaintiff seeks a denial of discharge under 11 U.S.C. § 727(a)(4)(A) and § 727(a)(5). The Plaintiff bears the burden of showing that the Mr. Levitin is not entitled to a discharge. FED. R. BANKR. P. 4005; *In re Pratt*, 411 F.3d 561, 565 (5th Cir. 2005). Upon an adequate showing by the Plaintiff, Mr. Levitin may produce evidence that he has not committed the acts alleged.[3] *In re Hawley*, 51 F.3d 246, 249 (11th Cir. 1996); *In re Mascolo*, 505 F.2d 274, 276 1st Cir.

---

[3] Rule 4005 "leaves to the courts the formulation of rules governing the shift of the burden going forward with the evidence in the light of considerations such as the difficulty of proving the nonexistence of a fact and of establishing a fact as to which the evidence is likely to be more accessible to the debtor than to the objector." *See* Advisory Committee Note accompanying Rule 4005.

1974). Ultimately, the Plaintiff must sustain its burden of proof before the Court will deny Mr. Levitin a discharge.

Section 727(a)(4)(A) provides that a debtor will be denied a discharge if the debtor made a false oath or account in connection with the bankruptcy filing. To prevail, the Plaintiff must establish the following elements: (1) Mr. Levitin made a statement under oath; (2) the statement was false; (3) Mr. Levitin knew the statement was false; (4) Mr. Levitin made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Pratt*, 411 F.3d at 566 (citing *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992)). The court's determination that a debtor has or has not made a false statement is a factual finding. *In re Andrews*, 98 Fed. Appx. 290, 294 (5th Cir. 2004).

A discharge will be denied under § 727(a)(5) when "the debtor has failed to explain satisfactorily … any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). The court's determination as to whether the debtor has or has not satisfactorily explained a loss of assets is a factual finding. *In re Andrews*, 98 Fed. Appx. at 295.

### Failure to Disclose

Mr. Levitin's schedules and statement of financial affairs are statements under oath. Attached to Mr. Levitin's schedules and statement of financial affairs is his declaration under penalty of perjury that the schedules are true to the best of his knowledge, information and belief. *See* FED. R. BANKR. P 1008 ("All petitions lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration…").

Mr. Levitin's schedules and statement of financial affairs were false because they fail to disclose that he owns an interest in H-town and fail to accurately disclose Mr. Levitin's and his wife's income. The statement of financial affairs does not reflect that he received the $740,000

4

in consulting fees from TMG in 2004. Indeed, his statement reflects that his 2004 income was only $48,000 and that his wife's income was $15,000 in that year.

With respect to the consulting fees, Mr. Levitin claims that the fees were not income because they were the proceeds of a loan from Cendant/ERA. The Cendant/ERA loan was to TMG. TMG paid consulting fees to Mr. Levitin. The money was not a loan to Mr. Levitin. Indeed, his schedules do not reflect any debt by him on account of the "loan."

However, if the problem was an innocent misunderstanding by Mr. Levitin, then the failure to disclose would not be a knowing and fraudulent failure to disclose. Put simply, if Mr. Levitin treated himself and TMG as a single entity for reporting purposes, then the Court could understand the alleged confusion as to whether this was income to Mr. Levitin.

Because a debtor is unlikely to testify directly that he or she fraudulently intended to omit assets, the court may infer fraudulent intent under § 727(a)(4)(A) when it is shown that the debtor exhibited a reckless indifference to the truth. *In re Sholdra*, 249 F.3d 380, 382 (5th Cir. 2001); *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992) (the existence of more than one falsehood together with a debtor's failure to take advantage of the opportunity to clear up all inconsistencies or omissions in amended schedules is sufficient evidence of a debtor's reckless indifference to the truth).

Mr. Levitin does not list any of TMG's assets in his bankruptcy schedules. Indeed, after filing chapter 7, Mr. Levitin treated TMG as a separate entity. It continued in business and did not liquidate on account of his bankruptcy filing. The Court concludes that the characterization of the advance as a "loan" is an after-the-fact justification for the non-disclosure. Mr. Levitin made a knowing and fraudulent false oath with respect to his income.

Nonetheless, the Court's greater concern relates to H-Town. At all relevant times, Mr. Levitin and Sandra Morgan have been married. Although they testified that they separated in

5

October 2005, they have not divorced. They continue to work for H-Town. H-town was established as a sham continuation of TMG's business, *sans* the obligation to Cendant/ERA. The funds to form H-Town were largely withdrawn from TMG. TMG does not claim to own H-Town. The withdrawn funds are not listed as income to either Sandra Morgan or Mr. Levitin on the statement of financial affairs. If the funds went from TMG to its owners, then the funds and the proceeds of the funds became the owner's property. If the funds were not income, then they were a loan from TMG. Nonetheless, the distinction is largely irrelevant. Those funds were used to form H-Town.

When Mr. Levitin filed bankruptcy, all of his community property that was under his sole, equal management or joint control became property of the estate. 11 U.S.C. § 541. At all relevant times, Mr. Levitin exercised substantial control over H-Town. He participated in its organization, signed the real estate lease for its new offices, moved his remaining TMG operations into its space, and now directs its operations.

The Court concludes that Mr. Levitin failed to disclose H-Town in order to deprive creditors of the rights of ownership in H-Town. It was done knowingly and fraudulently.

Part of the Court's analysis with respect to H-Town is colored by the analysis with respect to the $740,000. If Mr. Levitin believed that the $740,000 did not have to be disclosed because of his identity of interest with TMG, then he knew that the investment in H-Town did have to be disclosed.

He cannot have it both ways. To accept Mr. Levitin's version of his misunderstanding, the Court must assume that Mr. Levitin can change the identity-of-interest theory as it meets his convenience for the false statements in his schedules and statement of financial affairs. Mr. Levitin is a very sophisticated businessman. The Court declines to believe such contrivances.

Finally, Mr. Levitin's false oath was material. A false oath is material if it relates to the debtor's business transactions or estate, or concerns the discovery of assets or the existence and disposition of his property. *In re Beaubouef*, 966 F.2d at 178 (quoting *In re Chalik*, 748 F.2d 616, 617 (11th Cir. 1984)). In this case, Mr. Levitin failed to disclose his income from TMG and failed to disclose his interest in H-town. These omissions are material since such information concerns the existence and disposition of Mr. Levitin's property and directly relates to the bankruptcy estate.

Because the Court finds that denial of Mr. Levitin's discharge is proper under § 727(a)(4)(A), the Court need not consider the validity of the Plaintiff's allegations under § 727(a)(5). *In re Beaubouef*, 966 F.2d at 177.

## Conclusion

For the reasons set forth above, a separate judgment denying Mr. Levitin's discharge will be issued.

Signed at Houston, Texas, on February 6, 2007.

_____
MARVIN ISGUR
United States Bankruptcy Judge

7